USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/29/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RANDA JAAFAR, M.D.,

Plaintiff,

-against-

NEW YORK SPINE & SPORT REHABILITATION MEDICINE, P.C.,

Defendant.

24-cv-6588 (MKV)

**MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

MARY KAY VYSKOCIL, United States District Judge:

In this action, Plaintiff Randa Jaafar, M.D. brings claims against Defendant New York Spine & Sport Rehabilitation Medicine P.C. ("Defendant" or "NYSSRM") alleging sex discrimination, hostile work environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), the New York State Human Rights Law, N.Y. Exec. L. §§ 296 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, N.Y. City Admin. Code §§ 8-101 *et seq.* ("NYCHRL"). *See* Amended Complaint. [ECF No. 13 ("AC")]. Specifically, Plaintiff's first cause of action is styled as sex discrimination under Title VII, AC ¶¶ 66-73, and her second cause of action is for retaliation under Title VII. AC ¶¶ 74-82. Her third cause of action is for sex discrimination under the NYSHRL, AC ¶¶ 83-91, and her fourth cause of action is for retaliation under the NYSHRL. AC ¶¶ 92-100. Her fifth cause of action is for sex discrimination under the NYCHRL, AC ¶¶ 101-109, and her sixth, and final, cause of action is for retaliation under the NYCHRL. AC ¶¶ 110-118. The Court notes that despite styling her claims under Title VII, the NYSHRL, and the NYCHRL as "discrimination," the body of the Amended

Complaint contains allegations that Defendant discriminated against her by creating and/or fostering a sex-based hostile work environment. AC ¶¶ 68, 86, 104.[1]

Before the Court is Defendant's fully briefed motion for summary judgment seeking dismissal and/or judgment as a matter of law on all of Plaintiff's claims. [ECF No. 49].

In support of its summary judgment motion, Defendant filed a memorandum of law ("Mem."), [ECF No. 53], three declarations of Christine A. Rodriguez, Esq., ("Rodriguez Decl."), with attached exhibits [ECF Nos. 49-51], and a Local Rule 56.1 Statement of Undisputed Material Facts. [ECF No. 52]. Plaintiff has filed an opposition (Opp'n), [ECF No. 54], a declaration of Joshua M. Friedman, Esq., with attached exhibits ("Friedman Decl.") [ECF No. 55], an affidavit of Plaintiff Randa Jaafar ("Pl. Aff."), [ECF No. 54-1], and a purported Counter-statement to Defendant's Local Rule 56.1 Statement ("Counter-statement"). [ECF No. 56]. However, Plaintiff's Counter-statement inexplicably ignored the Local Rule 56.1 Statement Defendant actually filed in conjunction with its motion and instead responded to the proposed Local Rule 56.1 Statement Defendant previously had submitted in connection with its pre-motion letter at ECF No. 42 seeking leave to file its anticipated motion for summary judgment. In accordance with the Court's Individual Rules, that proposed Local Rule 56.1 Statement cited to evidence but had placeholders for the corresponding exhibits that reflected the evidence.[2] *See* Individual Rules of Practice in Civil Cases § 4(a)(i) ("The supporting exhibits need not be filed with the Court until the parties submit their actual motion."). Other than a few minor tweaks and edits for typos,

[1] The Court notes that unlike Title VII, the NYSHRL and NYCHRL do not distinguish "between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination." *Perez v. Trinity Sch. Realty Holding Corp.*, No. 24-CV-544 (VEC), 2026 WL 2123265, at *10 (S.D.N.Y. July 23, 2026) (quoting *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 262 (S.D.N.Y. 2025)).

[2] For example, in the first paragraph of Defendant's proposed Local Rule 56.1 Statement, Defendant cites to "Exh. __ Deposition of Dr. Sireen Gopal at 9:13-25" for the proposition that NYSSRM was founded by Dr. Sireen Gopal in 2002. [ECF No. 42 at 4].

Defendant's Local Rule 56.1 Statement filed in connection with its motion is largely identical to the proposed Local Rule 56.1 Statement it previously filed. Accordingly, many of Plaintiff's objections for Defendant's purported failure to comply with Local Rule 56.1(d) in citing evidence in its Rule 56.1 Statement are entirely misplaced.

In response, Defendant filed a reply memorandum of law ("Reply"), [ECF No. 59], as well as a further reply to Plaintiff's Counter-statement. [ECF No. 58]. In its further reply to Plaintiff's Counter-statement, Defendant helpfully recreates Plaintiff's misplaced Counter-statement verbatim but includes the evidence it did in fact cite to in the Local Rule 56.1 Statement it actually filed in connection with its motion for summary judgment. [ECF No. 58 ("Def. 56.1 Reply" or "Defendant's Reply 56.1 Statement")].

For the reasons set forth below, Defendant's motion for summary judgment is granted.

## BACKGROUND[3]

Defendant NYSSRM is a medical practice founded by Dr. Sireen Gopal. Def. 56.1 Reply ¶ 1. Plaintiff began working for Defendant in May 2016 pursuant to a contract with automatic one-year renewals. Def. 56.1 Reply ¶¶ 2-3. Throughout her employment, she was one of only three physicians and the only female physician working with NYSSRM. Def. 56.1 Reply ¶ 20. The other two male physicians were Dr. Elzholz and Dr. Diwan. Def. 56.1 Reply ¶ 22. While the parties agree that Dr. Diwan had a working relationship with Defendant's practice, they dispute whether Dr. Diwan was a formal employee of Defendant. Def. 56.1 Reply ¶ 24.

Under her initial employment contract, Plaintiff was paid an annual base salary of $240,000 and was eligible to also receive 30% of all collected revenues for services she provided once

[3] Given that Plaintiff failed to file a counter-statement to the Local Rule 56.1 Statement that Defendant filed in connection with its motion, the background is derived from Defendant's Reply 56.1 Statement as well as the exhibits cited by the parties in that document. All facts are undisputed unless otherwise indicated.

Defendant had collected $510,000 in billed services. Def. 56.1 Reply ¶ 4. On April 21, 2017, Plaintiff emailed Dr. Gopal complaining about staffing issues and issues concerning payment collection for services she provided. Def. 56.1 Reply ¶ 8; Rodriguez Decl., Ex. F. Dr. Gopal responded and stated, among other things, that Plaintiff should not voice her complaints about salary with other staff members. Rodriguez Decl., Ex. F. Plaintiff concedes that nowhere in this exchange did she raise a complaint of harassment or discrimination on the basis of sex or otherwise. Def. 56.1 Reply ¶ 10. However, Plaintiff testified that she complained at some point in 2017 that "the other doctors in the practice, both male, still make a lot more than me. I work harder than them." Def. 56.1 Reply ¶ 10 (citing Friedman Decl., Ex. B ("Pl. Dep.") at 63:15-24).

After her first year, Plaintiff's compensation changed to a pure commission structure pursuant to which she received 50% of revenues collected for her services. Def. 56.1 Reply ¶ 5. Defendant asserts that Plaintiff never complained about her commission-based compensation in 2017, Def. 56.1 Reply ¶ 12, but Plaintiff disputes that assertion citing her deposition testimony where she testified that she told Dr. Gopal in 2017 (and no later than November 2017) that it did not make sense why the other male physicians in the practice (Dr. Diwan and Dr. Elzholz) received higher commission rates despite having less credentials. Def. 56.1 Reply ¶ 12; *see also* Pl. Dep. 51:1-11 ("I don't remember, but I think I said something like, [h]ow come Dr. Diwan gets 70 and Bryan gets 60, and I have more credentials than them? I have more credentials than you. I have more board certifications than all of you guys.").[4] Plaintiff testified that in response Dr. Gopal told her she was ingrate. Pl. Dep. 51:1-11; *see also* Friedman Decl., Ex F (November 6, 2017 text, with no context, reflecting that Dr. Gopal stated "the worst thing you want me to perceive you as

[4] Plaintiff also cites to an undated text message to Dr. Gopal stating that Dr. Gopal treats her like a "PA," to which Dr. Gopal responds that "I should find some one who appreciates what I do." Friedman Decl., Ex. F.

is an ingrate!"). Plaintiff concedes, however, that the other two doctors had been practicing "for many more years than Plaintiff" when she was hired by Defendant. Def. 56.1 Reply ¶ 22.

In November 2017, Plaintiff's entitlement to 50% of her collected revenues was reduced to 40% due to "high business expenses and reduced revenue collection." Def. 56.1 Reply ¶ 6. When informed of the change, Plaintiff replied to Dr. Gopal via text that she "totally understand[s]." Friedman Decl., Ex. D. Moreover it is undisputed that "by 2018," Plaintiff "requested that her compensation be changed to commission only at 40% of collected revenue." Def. 56.1 Reply ¶ 11. Plaintiff's yearly earnings increased after moving to the commission only structure. Def. 56.1 Reply ¶ 13.[5]

By 2018, Plaintiff also began for herself two days a month, and by October 2018, she indicated that she wanted to work independently one day a week. Def. 56.1 Reply ¶¶ 14-15. From 2019 to 2021, the number of days she worked independently increased such that 50% or more of her income came from her solo practice. Def. 56.1 Reply ¶ 18. As such, her yearly earnings from her work at Defendant's practice were lower in 2020 and 2021 given her independent work. Def. 56.1 Reply ¶ 19. Plaintiff does not dispute that her earnings working for Defendant decreased because of her independent work but adds, with no evidentiary support, that her earnings also decreased due to the COVID-19 pandemic. *See* Def. 56.1 Reply ¶ 19.

In October 2018, Plaintiff attended a Halloween party hosted by Dr. Gopal. Def. 56.1 Reply ¶ 37. Plaintiff claims, and Defendant disputes, that she won best costume at the Halloween party and as a result was propositioned to spend the night at Dr. Gopal's home as a prize. Def. 56.1 Reply ¶ 39; *see also* Pl. Dep. 133:4-135:10. Plaintiff declined the offer. Pl. Dep. 135:4-10.

[5] Plaintiff's objection to this fact on the basis that Defendant did not cite to evidence is, as discussed, entirely misplaced. The evidence Defendant cited directly supports this contention. *See* Rodriguez Decl., Ex. G.

Without any specifics, Plaintiff alleges that after she denied Dr. Gopal's "sexual advance," her employment with Defendant "became more hostile, more harassment, more comments, and I just progressively made less." Pl. Dep. 135:12-23. Plaintiff nonetheless continued to attend Dr. Gopal's Halloween parties in 2019 and 2020 and went on vacation with Dr. Gopal to Lake Tahoe in 2020. Def. 56.1 Reply ¶¶ 42-43.[6] And, as noted, she began to spend more of her time working independently of Dr. Gopal's practice.

On December 21, 2020, Plaintiff complained that Dr. Gopal was deducting money from her paycheck for a pension she did not want. Rodriguez Decl., Ex. Q; *see also* Def. 56.1 Reply ¶ 50-51. It is undisputed that Dr. Elzholz dealt with this exact issue as the same payments were also drawn from Dr. Elzholz's paycheck. Def. 56.1 Reply ¶ 50-51; *see also* Rodriguez Decl., Ex. P (Plaintiff testifying in a separate state case brought by Dr. Gopal against her that she believed Dr. Gopal initiated the case because "I didn't let him take the pension out of my pay. He wanted revenge, and he takes the pension out of [Dr. Elzholz's] pay. So he got away with it with [Dr. Elzholz]. And I also think he's doing it to, kind of, intimidate [Dr. Elzholz] as well").[7]

In or about 2021, Dr. Gopal learned that Plaintiff was purportedly providing pain management services at locations in Manhattan within the geographic area prohibited by the restrictive covenant in her employment contract with Defendant. Def. 56.1 Reply ¶ 52.[8] Also at this time, Dr. Gopal began to raise issues about Plaintiff's performance. Def. 56.1 Reply ¶ 53.

---

[6] Plaintiff admits these facts but asserts with no evidentiary support that she attended these trips as part of her employment. Def. 56.1 Reply ¶¶ 42-43.

[7] Plaintiff does not deny that Dr. Elzholz dealt with the same pension issue but avers that her testimony in the state case is "irrelevant to any material issue in this case as [it] demonstrates Dr. Gopal's behavior of unlawfully withholding employee's pensions." Def. 56.1 Reply ¶ 51.

[8] The cited text exchange does not support the proposition that Plaintiff did in fact provide services in violation of the restrictive covenant. Rather the cited texts only support that Dr. Gopal accused her of violating the condition. *See* Rodriguez Decl., Ex. Q.

Thereafter, on November 4, 2021, Plaintiff and Dr. Gopal had a lengthy dispute via text concerning the appropriate care of a patient. *See* Rodriguez Decl., Ex. I. Dr. Gopal told Plaintiff not to call a patient a "drug addict" as it could "land you in serious issues including malpractice." *Id.* The two then texted back and forth. Plaintiff told Dr. Gopal not to "teach [her] how to speak" and accused Defendant of "verbal abuse" after Dr. Gopal stated that Plaintiff was "giving triggerpoints to peoples [sic] in chiropractic offices." *Id.* After Plaintiff stated she does not need to be told what to do as she "graduated from iv [sic] league schools," Dr. Gopal retorted that her education was unimpressive, that she was an "Instagram trigger point chiropractor" not a real doctor, and that she should see a therapist "rather feeling imp [sic] on the likes of an Instagram star public account with the perverted men following." *Id.* Plaintiff points to this text exchange, as well as the proposition at the 2018 Halloween party, as instances of "sex discrimination." *See* Def. 56.1 Reply ¶ 46.

After this exchange, on November 4, 2021, Plaintiff texted Dr. Gopal her notice of resignation and indicated she would be happy to continue working until December 31, 2021. Rodriguez Decl., Ex. Q; *see also* Def. 56.1 Reply ¶¶ 26, 47; *see also* Pl. Dep. 171:11-22 (Plaintiff testifying that she gave her notice of resignation on November 4, 2021)..[9] While Plaintiff concedes she tendered her resignation on November 4, 2021, and testified as much under oath, the Court notes that in her affidavit submitted in connection with her opposition to summary judgment, Plaintiff avers, with no citation to the record, that she resigned on December 31, 2021 "after enduring years of harassment from Dr. Gopal." Pl. Aff. ¶ 13. In her affidavit, Plaintiff, with no citation to any record evidence, also asserts that her claims arise from a pattern of "gender-based

[9] Plaintiff does not deny that she gave her notice of resignation on November 4, 2021, but clarifies in her Counter-statement that she did not just resign due to this text message thread, but rather due to being regularly bullied and manipulated by Dr. Gopal. Def. 56.1 Reply ¶ 47. Plaintiff cites no evidence for this claim.

comments, unwelcome personal remarks, and ongoing hostility." Pl. Aff. ¶ 3. In addition, Plaintiff claims, again without citation, that she made a final complaint about Dr. Gopal to Dr. Diwan in December 2021 and that Dr. Diwan told her that Dr. Gopal "is a chauvinist" and that she "needed to leave the practice, as Dr. Gopal was not going to change." Pl. Aff. ¶¶ 10-11.

On February 17, 2022, Defendant emailed Plaintiff an attached letter that accepted Plaintiff's resignation as of December 15, 2021. Rodriguez Decl., Ex. J; Def. 56.1 Reply ¶ 28. The attached letter outlined Plaintiff's alleged performance issues. *See* Rodriguez Decl., Ex. J. In the email itself, Dr. Gopal wrote that he would pursue enforcement of the restrictive covenant in Plaintiff's employment contract that Plaintiff purportedly had violated by working within two miles of Defendant's offices. Rodriguez Decl., Ex. J. Plaintiff responded that she was not comfortable speaking with Dr. Gopal due to his history of "bullying behavior, verbal abuse, chauvinistic comments and actions and your unprofessionalism in speaking to me about my education and background." Rodriguez Decl., Ex. J.

On September 19, 2022, Defendant initiated an action against Plaintiff in New York County Supreme Court for breach of her employment agreement with Defendant. *See* Rodriguez Decl., Ex. U; *see also* Def. 56.1 Reply ¶ 61.[10] In a sworn affidavit in that case, Plaintiff stated that "the primary reason for leaving" Defendant was because Dr. Gopal lost an insurance contract "which was by far the largest plan in the practice providing the majority of patients." Rodriguez Decl. Ex. O; *see also* Def. 56.1 Reply ¶ 49.

On October 20, 2022, Plaintiff filed her EEOC charge alleging sex discrimination, retaliation, and gender and sexual harassment throughout her employment. Rodriguez Decl., Ex.

[10] Plaintiff purports to deny this fact by falsely asserting that Defendant did not file supporting evidence but otherwise states the fact "is not material to any claim" she raises. Def. 56.1 Reply ¶ 61.

V. Plaintiff obtained a right to sue letter on June 4, 2024. Friedman Decl., Ex. N. Thereafter, Plaintiff initiated the case before this Court on August 30, 2024, [ECF No. 1] and later filed her operative Amended Complaint. [ECF No. 13].

## LEGAL STANDARD

### I. Summary Judgment

A district court may grant a motion for summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a). "[T]he court must 'view the evidence in the light most favorable to the non-moving party and draw *all reasonable inferences in its favor*.'" *Williams v. New York City Hous. Auth.*, 61 F.4th 55, 72 (2d Cir. 2023) (emphasis in original) (quoting *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995)). Put another way, summary judgment is inappropriate unless "no reasonable jury could return a verdict for the nonmoving party." *Tiffany & Co. v. Costco Wholesale Corp.*, 971 F.3d 74, 83 (2d Cir. 2020).

The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008). A party cannot defeat a motion for summary judgment by relying on mere allegations in its pleading or speculation as to the true nature of the facts. *Penn v. New York Methodist Hosp.*, 884 F.3d 416, 423 (2d Cir. 2018); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *Gottlieb v. Cnty. of Orange*, 84 F.3d 511, 518 (2d Cir. 1996) (A party opposing summary judgment "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements"). Rather, a party must establish the absence or presence of a genuine issue

of material fact by "citing to particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *see also Wright v. Goord*, 554 F.3d 255, 266 (2d Cir. 2009). Critically, it is well-established that a plaintiff's own "self-serving declaration[ ], not supported by evidence, [is] generally not sufficient to create an issue of material fact." *789 Ninth & 414 E. 74th Assocs. LLC v. Hundalani*, No. 21-cv-5314 (VM), 2023 WL 4472162, at *4 (S.D.N.Y. July 11, 2023); *see also Deebs v. Alstom Transp., Inc.*, 346 F. App'x 654, 656 (2d Cir. 2009); *Dreni v. PrinterOn America Corp.*, No. 18-cv-12017 (MKV), 2021 WL 4066635, at *13 (S.D.N.Y. Sept. 3, 2021).

The Second Circuit has "emphasized 'the need for caution'" in evaluating an employer's motion for summary judgment in a discrimination case turning on "the employer's intent." *Uttarwar v. Lazard Asset Mgmt. LLC*, No. 24-1085-CV, 2025 WL 704278, at *1 (2d Cir. Mar. 5, 2025) (quoting *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 101 (2d Cir. 2010)); *see also Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008). Nonetheless, even in this context a plaintiff must provide more than conclusory allegations to defeat summary judgment. *Holcomb*, 521 F.3d at 137.

**II. Title VII Claims**

Title VII claims, including claims of sex discrimination, hostile work environment, and retaliation, are governed at the summary judgment stage by the familiar multi-step burden-shifting analysis established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), which assesses whether a plaintiff has demonstrated sufficient evidence of discrimination.

***A. Discrimination***

Under Title VII, it is unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). To establish a *prima facie* claim for

discrimination under Title VII, a plaintiff must show at the first step of the *McDonnell Douglas* framework that "(1) she is a member of a protected class; (2) she is qualified for her position; (3) she suffered an adverse employment action; and (4) the circumstances give rise to an inference of discrimination." *Bart v. Golub Corp.*, 96 F.4th 566, 570 (2d Cir. 2024), *cert. denied sub nom. The Golub Corp. v. Elaine Bart*, 145 S. Ct. 173, 220 L. Ed. 2d 30 (2024). If a plaintiff establishes a *prima facie* case, pursuant to *McDonnell Douglas*, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason for its adverse action." *Id.* (citation modified). If an employer meets that burden, the burden reverts to plaintiff to prove the nondiscriminatory reason was pretextual. *Id.*

***B. Hostile Work Environment***

Where a plaintiff alleges a hostile work environment claim, the plaintiff must show "that the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment" and that there is a basis for imputing the objectionable conduct to the employer. *Banks v. Gen. Motors, LLC*, 81 F.4th 242, 261 (2d Cir. 2023); *Tolbert v. Smith*, 790 F.3d 427, 439 (2d Cir. 2015). Of course, "[i]t is axiomatic that the plaintiff also must show that the hostile conduct occurred because of a protected characteristic." *Tolbert*, 790 F.3d at 439.

***C. Retaliation***

Title VII makes it unlawful to retaliate against an employee for participating in activity protected by Title VII. 42 U.S.C. § 2000e–3(a). To establish a *prima facie* case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected

activity and the materially adverse action or actions." *Carr v. N.Y.C. Transit Auth.*, 76 F.4th 172, 180 (2d Cir. 2023). Similar to claims for discrimination, once the *prima facie* case is established the burden shifts to the employer to provide a legitimate, non-discriminatory justification for the adverse employment action. *See Zann Kwan v. Andalex Grp. LLC*, 737 F.3d 834, 845 (2d Cir. 2013). If that burden is met, the plaintiff must then show that the employer's justification is pretextual. *Id.*

Where, as here, a plaintiff alleges a "retaliatory hostile work environment," she need not demonstrate that the allegedly retaliatory actions meet the higher "severe and pervasive" standard for a hostile work environment claim. *Carr*, 76 F.4th at 180-81. Rather, a plaintiff need only show that the complained of conduct, "taken in the aggregate, are materially adverse and would dissuade a reasonable employee from making a complaint of discrimination." *Id.* To be "materially adverse," an action must cause more than "trivial harms," "petty slights," or "minor annoyances." *Id.* at 179 (citation modified).

**III. Claims Under the NYSHRL and NYCHRL**

While the NYSHRL historically used the same standard for claims of discrimination, hostile work environment, and retaliation as Title VII, it was amended in 2019 to align with the more liberal NYCHRL standards. *Wright v. White Plains Hosp. Med. Ctr.*, 237 A.D.3d 1143, 1145, 232 N.Y.S.3d 594, 596 (2d Dep't 2025) ("As a result of the amendment, the NYSHRL now aligns with the standards of the [NYCHRL]"); *Qorrolli v. Metro. Dental Assocs.*, 124 F.4th 115, 122–23 (2d Cir. 2024) ("The NYSHRL historically utilized the same standard as Title VII, but it was amended in 2019 to align with the NYCHRL's more liberal pleading standard.") (citation modified). The New York Court of Appeals has made clear that both the NYSHRL and NYCHRL

are to be construed liberally to accomplish their remedial purposes. *Syeed v. Bloomberg L.P.*, 41 N.Y.3d 446, 451, 235 N.E.3d 351, 354, 211 NY.S.3d 819, 822 (N.Y. 2024).

***A. Discrimination***

A claim for discrimination under the NYSHRL and NYCHRL adheres to the familiar *McDonnell Douglas* standard and the "mixed-motive framework, which imposes a lesser burden on a plaintiff." *Wright*, 237 A.D.3d at 1145, 232 N.Y.S.3d at 596. Specifically, to establish a discrimination claim under the NYSHRL or NYCHRL a plaintiff must show "'by a preponderance of the evidence that she has been treated less well than other employees because of her' race, gender, or national origin." *Valerio v. Metro. Transportation Auth.*, No. 24-1614, 2025 WL 686028, at *4 (2d Cir. Mar. 4, 2025) (quoting *Mihalik v. Credit Agricole Cheuvreux North America, Inc.*, 715 F.3d 102, 109 (2d Cir. 2013). However, discrimination must play "no role" in an employment decision. *Wright*, 237 A.D.3d at 1145, 232 N.Y.S.3d at 596. Thus, a plaintiff may defeat a motion for summary judgment by establishing that the employer's actions were motivated at least in part by discrimination. *Id.*

***B. Hostile Work Environment.***

The standards for a hostile work environment claim under the NYSHRL and NYCHRL are similarly less burdensome than under Title VII. "Under the NYCHRL [and the NYSHRL], unlike under Title VII . . . there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination." *Perez v. Trinity Sch. Realty Holding Corp.*, No. 24-cv-544 (VEC), 2026 WL 2123265, at *10 (S.D.N.Y. July 23, 2026) (quoting *McSweeney v. Cohen*, 776 F. Supp. 3d 200, 262 (S.D.N.Y. 2025)). Thus, similar to a claim for discrimination, a plaintiff asserting a hostile work environment claim under the NYSHRL and NYCHRL need only demonstrate that she has been treated less well

than other employees because of a protected characteristic. *See Cummings v. City of New York,* 246 A.D.3d 560, 561, 251 N.Y.S.3d 91, 92-93 (1st Dep't 2026); *Wheeler v. Praxair Surface Techs., Inc.*, 694 F. Supp. 3d 432, 451 (S.D.N.Y. 2023).[11]

### *C. Retaliation*

Retaliation claims under the NYSHRL and NYCHRL similarly adhere to the *McDonnell Douglas* standard but also are less demanding than Title VII claims. *Edelman v. NYU Langone Health Sys.*, 141 F.4th 28, 45 (2d Cir. 2025). Under the NYSHRL and NYCHRL a plaintiff demonstrate "that she took an action opposing her employer's discrimination and that, as a result, the employer engaged in conduct that was reasonably likely to deter a person from engaging in such action." *Id.* (quoting *Qorrolli*, 124 F.4th at 122).

## DISCUSSION

The Court notes that the statement of facts in Plaintiff's opposition brief consists almost entirely of unsupported assertions, assertions with inapposite citations to her Counter-statement,[12] or otherwise simply cites to allegations in the operative Amended Complaint with no evidentiary support. To defeat a motion for summary judgment after the close of fact discovery, Plaintiff can no longer rely on bald assertions in the Amended Complaint, but rather must come forward with

---

[11] The Court notes that it remains unsettled whether, in light of the 2019 amendment, "the NYSHRL's liability standard is now coextensive with that of the NYCHRL, or whether it requires more, so as to impose a standard between federal and city law." *Wheeler*, 694 F. Supp. 3d at 451. Given that the Court ultimately declines to exercise supplemental jurisdiction over the NYSHRL claims given the dismissal of Plaintiff's Title VII claims, the Court need not resolve this issue beyond noting that the standard under both the NYSHRL and NYCHRL is less onerous than the standard under Title VII. *See Roach v. N.Y. Housing Auth.*, No. 23-cv-08135 (JGLC)(SN), 2026 WL 2587545, at *5 (S.D.N.Y. July 14, 2026), *report and recommendation adopted sub nom. Roach v. New York Hous. Auth.*, No. 23-cv-8135 (JGLC) (SN), 2026 WL 2585477 (S.D.N.Y. Sept. 1, 2026) ("Despite the unsettled question, the prevailing view in this District has been to consider claims involving post-amendment conduct under the NYSHRL in concert with claims under the NYCHRL.").

[12] For example, Plaintiff cites to paragraph 23 of her Counter-statement for the statement in her opposition brief that her boss's "offensive and discriminatory comments were often directed at [her], and about other female staff and [her] sexual partners in [her] presence." Opp'n at 7. However, in the cited paragraph Plaintiff merely admits that a Dr. Diwan was her "chairman" during her fellowship at Cornell and that Dr. Diwan introduced her to her boss, Dr. Gopal. *See* Counter-statement ¶ 23.

record evidence to demonstrate a genuine issue of material fact and/or her entitlement to judgment as a matter of law. *See Penn v. New York Methodist Hosp.*, 884 F.3d 416, 423 (2d Cir. 2018); *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010); *Gottlieb*, 84 F.3d at 518 (A party opposing summary judgment "cannot defeat the motion by relying on the allegations in his pleading . . . or on conclusory statements.").

**I. Plaintiff's Title VII Sex Discrimination Claims Are Abandoned**

Where, as here, a counseled non-moving party submits "a partial response arguing that summary judgment should be denied as to some claims while not mentioning others," that response "may be deemed an abandonment of the unmentioned claims." *Jackson v. Federal Express*, 766 F.3d 189, 195 (2d Cir. 2014). Even "[w]here abandonment by a counseled party is not explicit," a court may infer abandonment "from the papers and circumstances viewed as a whole." *Id.* at 196.

The circumstances and papers in this case support the inference that Plaintiff has abandoned her stand-alone Title VII sex/gender discrimination claims. Specifically, Defendant moved for summary judgment with respect to Plaintiff's claims that she was discriminated against on the basis of her sex/gender, Mem. at 10-16, as well as her claims of hostile work environment and retaliation. *Id.* at 16-24. In her brief in opposition to Defendant's motion for summary judgment, however, Plaintiff exclusively opposes summary judgment with respect to her hostile work environment and retaliation claims under Title VII, the NYSHRL, and the NYCHRL. Opp'n at 13-25.[13] Indeed, in entirely ignoring a prominent aspect of Defendant's motion, Plaintiff clarifies that she is only asserting claims for "hostile work environment and retaliation *by way of*

[13] The Court does not deem Plaintiff as having abandoned her discrimination claims under the NYSHRL and NYCHRL by virtue of only defending her hostile work environment claim because under the NYSHRL and NYCHRL "there is no distinction between a claim premised on the creation of a hostile work environment (a species of harassment claim) and one premised on unlawful discrimination." *Perez*, 2026 WL 2123265, at *10.

gender discrimination and sexual harassment" under Title VII, the NYSHRL, and the NYCHRL. Opp'n at 5 (emphasis added). Plaintiff does not address the legal standard concerning her Title VII sex/gender discrimination claims and argues only that her claims for hostile work environment and retaliation should survive. *See generally* Opp'n. Plaintiff argues exclusively that the sex/gender discrimination she faced took the form of a hostile work environment and that her retaliation claim is premised on facing a hostile work environment after complaining about Dr. Gopal's treatment of her. *Id.* at 13-21.

Accordingly, Plaintiff's failure to substantively respond in any way meaningful way to Defendant's arguments concerning what Plaintiff labeled in her first cause of action in her Amended Complaint as a claim for sex discrimination under Title VII results in its abandonment. *See Moll v. Telesector Res. Grp., Inc.*, 94 F.4th 218, 257 (2d Cir. 2024) (finding plaintiff abandoned claims for unequal pay under Title VII where she "failed to argue in the district court against summary judgment dismissing" that claim); *see also Kovaco v. Rockbestos–Surprenant Cable Corp.*, 834 F.3d 128, 144 (2d Cir. 2016) (finding hostile-work-environment claims abandoned because the non-movant filed a brief that "failed to support or even address" those claims); *Camarda v. Selover*, 673 F. App'x 26, 30 (2d Cir. 2016) (upholding abandonment of hostile work environment and retaliation claims where opposition brief "argued only that summary judgment should be denied as to her *discrimination* claims") (emphasis in original); *Bruno v. City of New York*, No. 17-cv-7552 (PGG), 2019 WL 690340, at *11 (S.D.N.Y. Feb. 19, 2019) (holding similarly and collecting cases).

Thus, Plaintiff's claims under Title VII for sex/gender discrimination are deemed abandoned and Defendant is entitled to summary judgment on those claims.

**II. All Of Plaintiff's Title VII Claims Are Time-Barred**

In her first cause of action, Plaintiff alleges that Defendant discriminated against her on the basis of her sex/gender in part by subjecting her to a hostile work environment in violation of Title VII. AC ¶¶ 66-73. In her second cause of action, she alleges that in violation of Title VII Defendant subjected her to a retaliatory hostile work environment in response to her complaints about her sex-based discrimination. AC ¶¶ 74-82. She alleges that Defendant's conduct resulted in economic and other losses. AC ¶¶ 66-82. In her opposition brief, Plaintiff clarifies that the precise claims she is asserting under Title VII are: (1) a claim for a sex/gender-based hostile work environment; and (2) that she was subjected to a retaliatory hostile work environment for complaining about her sex-based mistreatment, which resulted in her constructive discharge. Opp'n at 5, 13, 19-22 (arguing that the retaliatory adverse action she faced was a hostile work environment that culminated in her constructive discharge). Defendant argues it is entitled to summary judgment on these claims because they are time-barred. For the reasons set forth below, the Court agrees.

"Title VII's administrative exhaustion provision requires that any complaint be filed with the EEOC within 300 days of the alleged discriminatory act." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 75 (2d Cir. 2010) (citing 42 U.S.C. § 2000e–5(e)(1)); *see also Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) (Under Title VII, a plaintiff must file a charge with the EEOC "in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred.").

In *National Railroad Passenger Corporation v. Morgan*, the Supreme Court explained that the word "practice" in Title VII refers to "a discrete act or single 'occurrence.'" 536 U.S. 101, 111

(2002). "Examples of discrete acts include terminating employment, failing to promote, denying a transfer, and refusing to hire." *King v. Aramark Servs. Inc.*, 96 F.4th 546, 559 (2d Cir. 2024). "Because a discrete discriminatory act is individually actionable and 'occurs' on the day that it 'happened,' the 300-day limitations period begins running on the day of each occurrence, meaning each discrete act claim carries its own 300-day limitations period." *Id.* (quoting *Morgan*, 536 U.S. at 110).

The continuing violation doctrine, invoked by Plaintiff, represents an exception to the 300-day limitations period. *See Banks*, 81 F.4th at 259. "Under the continuing violation doctrine, if 'specific and related instances of discrimination are permitted by the employer to continue unremedied for so long as to amount to a discriminatory policy or practice,' a continuing violation may be found." *Id.* (quoting *Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996)). If a continuing violation is found then "a court must then consider 'all relevant actions allegedly taken pursuant to the employer's discriminatory policy or practice, including those that would otherwise be time barred.'" *Id.* (quoting *Van Zant*, 80 F.3d at 713). Claims of hostile work environment by their nature are subject to the continuing violation doctrine given the claim involves repeated conduct that occurs over a series of days or even years. *King*, 96 F.4th at 559. Accordingly, as long as a single act contributing to the hostile work environment occurs within the filing period, the entire period of the hostile environment may be considered for purposes of determining liability. *Banks*, 81 F.4th at 260.

Here, it is undisputed that Plaintiff filed a charge of discrimination with the EEOC on October 20, 2022. Accordingly, any claims which arose prior to December 24, 2021—*i.e.*, 300-days before October 20, 2022—are time barred under Title VII unless saved by an action that took

place after that date which was undertaken pursuant to Defendant's alleged discriminatory policy or practice.

In response to Defendant's summary judgment motion, Plaintiff invokes the continuing violation doctrine for which she has the burden to establish. *See Morgan*, 537 U.S. at 107-08, 120; *Thomas v. City of New York*, 953 F. Supp. 2d 444, 452 (E.D.N.Y. 2013) ("It is of course plaintiff's burden to show the applicability of the continuing violation doctrine once defendants show that the action is time-barred."); *Flores v. New York City Hum. Res. Admin.*, No. 10-cv-02407 RJH, 2011 WL 3611340, at *3 (S.D.N.Y. Aug. 16, 2011). Plaintiff argues her hostile work environment and retaliation claims are timely because her constructive discharge took place on December 30, 2021 and therefore occurred within the 300-day limitations period. Opp'n at 25-27. In so arguing, she relies on her own affidavit in which she avers that she resigned on December 31, 2021, not December 30, 2021. Opp'n at 27; Pl. Aff. ¶ 13. Plaintiff does not point to a single discriminatory or retaliatory act that occurred within the limitations period aside from her alleged constructive discharge. *See* Opp'n at 25-27.

Defendant argues that Plaintiff's purported constructive discharge actually took place on November 4, 2021, the undisputed date on which she gave notice of her resignation. Mem. at 21-24; Reply at 1, 7-9 ("[T]he statutory clock on all her claims began to deafeningly count down the day that she announced she intended to resign on November 4, 2021. There is no dispute about the day she gave her resignation notice."). Using the November 4, 2021 resignation date, Defendant argues that since Plaintiff's constructive discharge occurred outside the 300-day limitations period and since there is no record evidence of other discriminatory or retaliatory conduct that occurred within the limitations period, all of Plaintiff's Title VII claims are time-barred. The Court agrees.

It is well settled that the statute of limitations for a claim of constructive discharge runs from the date the plaintiff provided the employer with notice of his intention to resign. *See Green v. Brennan*, 578 U.S. 547, 564 (2016) ("[W]e hold that a constructive-discharge claim accrues—and the limitations period begins to run—when the employee gives notice of his resignation, not on the effective date of that resignation."); *Flaherty v. Metromail Corp.*, 235 F.3d 133, 138–39 (2d Cir. 2000) (holding plaintiff's claim accrued on the date she gave definite notice of her intention to retire and stating "it is only the employee who can know when the atmosphere has been made so intolerable by the discrimination-motivated employer that the employee must leave"); *see also Nance v. New York Pub. Int. Rsch. Grp. Fund, Inc.*, No. 23-cv-3030 (MKV), 2025 WL 965883, at *9 (S.D.N.Y. Mar. 31, 2025) ("It is well settled that the statute of limitations for a claim of constructive discharge runs from the date the plaintiff provided the employer with definite notice of his intention to resign.").

Here, it is undisputed based on the record evidence that Plaintiff provided her notice of resignation on November 4, 2021—well beyond the 300-day limitations period. *See* Rodriguez Decl., Ex. Q (Plaintiff texting Dr. Gopal on November 4, 2021, "please take this as my formal resignation from New York spine and sport as of 1/1/2022 I will no longer be seeing patients. I am happy to finish the year off there through 12/31/21."); *see also* Def. 56.1 Reply ¶¶ 26, 47; *see also* Pl. Dep. 171:11-22 (Plaintiff testifying that she gave notice of resignation on November 4, 2021). Despite plainly conceding that she gave her notice of resignation on November 4, 2021, Plaintiff attempts to manufacture a dispute in her affidavit in which she claims that she "resigned my employment" on December 31, 2021. Pl. Aff. ¶ 13; *see also* Opp'n at 27. While it is not clear Plaintiff is even arguing that she gave formal notice of her resignation on December 31, 2021, Plaintiff's self-serving affidavit, which includes no citation to any record evidence, cannot

overcome the otherwise undisputed record on this issue, which includes her concession in her Counter-statement and her own sworn deposition testimony that she noticed her resignation on November 4, 2021. *See In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) (party cannot defeat summary judgment "simply by submitting an affidavit that contradicts the party's previous sworn testimony"); *Nance*, 2025 WL 965883, at *7 ("[I]t is well-established that a plaintiff's own 'self-serving declaration[ ], not supported by evidence, [is] generally not sufficient to create an issue of material fact.'") (quoting *789 Ninth & 414 E. 74th Assocs. LLC*, 2023 WL 4472162, at *4; *see also Deebs*, 346 F. App'x at 656 (finding that self-serving deposition testimony without "hard evidence adduced during discovery . . . is insufficient to defeat summary judgment").

Of course, the Court is sensitive to the fact that any discriminatory or retaliatory actions that occurred after Plaintiff's constructive discharge on November 4, 2021 but before her last day of employment could nonetheless render her claims timely. *See Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir. 2000) (incidents after submission of notices of resignation are relevant given that plaintiffs "were still a part of the work environment until the date they actually left. Hostility in that environment should not be tolerated simply because the plaintiffs had communicated an intention to resign."). However, as Defendant correctly points out, there is an absence of any evidence of discriminatory or retaliatory actions that occurred after Plaintiff's constructive discharge.

For her part, beyond arguing incorrectly that her constructive discharge occurred within the limitations period, Plaintiff fails to point to a single alleged retaliatory, hostile or discriminatory act that occurred within the statutory period before she left the workplace—*i.e.*, after December 24, 2021. Opp'n at 25-27. While Plaintiff does not raise this argument in her opposition, the Court notes that in Plaintiff's affidavit, Plaintiff, without any citation, claims she complained about Dr.

Gopal to Dr. Diwan in mid-December 2021 and that Dr. Diwan responded that "Dr. Gopal is a chauvinist" and Plaintiff should leave the practice because Dr. Gopal will not change. Pl. Aff. ¶¶ 10-12. Plaintiff then claims, again with no citation, that since Dr. Gopal continued to treat her "with hostility" over the next two weeks, she resigned. Pl. Aff. ¶¶ 12-13. However, for the same reasons stated above, this self-serving affidavit drafted in opposition to Defendant's motion for summary judgment, has no citations to the record and offers the bare conclusory allegation that Dr. Gopal continued to treat her with hostility until December 31, 2021. This cannot raise a genuine issue of fact to defeat summary judgment. *See Penn*, 884 F.3d at 423; *Nance*, 2025 WL 965883, at *7; *see also 789 Ninth & 414 E. 74th Assocs. LLC*, 2023 WL 4472162, at *4.

Since based on the record evidence the only discriminatory or retaliatory act that Plaintiff claims to have occurred within the statutory period is her constructive discharge, which actually occurred outside the limitations period on November 4, 2021, all of Plaintiff's claims under Title VII are time-barred and fail as a matter of law. Accordingly, Defendant has met its burden of establishing that Plaintiff's Title VII claims are time-barred. All the conduct with respect to Plaintiff's hostile work environment and retaliation claims under Title VII occurred outside the 300-day limitations period and Defendant is entitled to summary judgment on those claims.

**III. Plaintiff's Title VII Hostile Work Environment Claim Fails On The Merits**

Even if Plaintiff's claim for a hostile work environment were timely, Plaintiff has failed to adduce sufficient evidence to establish a genuine dispute of fact that the sexual harassment and discrimination she allegedly faced was "sufficiently severe or pervasive to alter the conditions of

[her] employment and create an abusive working environment." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (citation omitted).[14]

To defeat summary judgment on a hostile work environment claim, a plaintiff "must produce enough evidence to show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 102 (2d Cir. 2010) (citation modified). This entails an objective and subjective component—that the environment was objectively hostile and that the plaintiff perceived it as such. *Id.*; *see also Raspardo v. Carlone*, 770 F.3d 97, 114 (2d Cir. 2014). Moreover, Plaintiff must show the hostile conduct was carried out because of her sex. *See Falu v. Cnty. of Orange*, 814 F. App'x 655, 659 (2d Cir. 2020); *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007).

A court considers the totality of the circumstances in determining whether a hostile work environment exists, which includes "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Littlejohn v. City of New York*, 795 F.3d 297, 321 (2d Cir. 2015) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). "Isolated acts, unless very serious, do not meet the threshold of severity or pervasiveness." *Alfano*, 294 F.3d at 374; *see also Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004) (a single act must be "extraordinarily severe" to meet the threshold for a hostile work environment) (citation omitted). "There is no fixed number of incidents that a plaintiff must endure"; rather a court assesses "the nature, severity, and frequency of the conduct." *Alfano*, 294 F.3d at 379. While

[14] The Court reiterates that the standard for Plaintiff's hostile work environment is more exacting than the standard for her retaliatory hostile work environment claim. *See supra* Legal Standard, Section II.B; *Carr*, 76 F.4th at 180-81.

facially neutral incidents may be considered "among the 'totality of the circumstances'" there must be "some circumstantial or other basis for inferring that incidents sex-neutral on their face were in fact discriminatory." *Id.* at 378. "[The] standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (quoting *Oncale v. Sundowner Offshore Services Inc.*, 523 U.S., 75, 81 (1998)).

In her opposition brief, Plaintiff argues, without citation, that she has established a triable issue of fact as to her hostile work environment claim because she has adduced evidence of "sexual advances, invidious comments about her role as a woman physician, accusations of malpractice, interference with her patients, and a campaign of retaliation that culminated in her constructive discharge." Opp'n at 14-15 (further stating harassment "included overtly gender-based, sexualized and derogatory comments, unwanted sexual invitations, and explicit threats of litigation and professional ruin"). But as Defendant rightly points about, the vast majority of Plaintiff's purported evidence is entirely based on allegations in her amended complaint with no evidentiary support. *See* Reply at 4-5 (detailing Plaintiff's extensive reliance on allegations from her amended complaint in statement of facts when discussing the harassment Plaintiff faced). For example, Plaintiff exclusively cites to her amended complaint in asserting Dr. Gopal expressed to Plaintiff that she was not as qualified as male physicians because she was a woman, that other female staff members complained about Dr. Gopal, that Dr. Gopal frequently disparaged her abilities as a female physician, and that he told Plaintiff that women cease working after entering a relationship, among other issues. Opp'n at 6-12. However, the law is clear that a plaintiff cannot defeat a motion for summary judgment by simply relying on the allegations in her pleadings, *Gottlieb*, 84

F.3d at 518, but rather must come forward with record evidence in support of her charges. *Goord*, 554 F.3d at 266.

Accordingly, based on a close review of Defendant's Counter-statement and Plaintiff's Opposition, the Court focuses only on alleged incidents of sexual harassment or discrimination for which Plaintiff provided at least some modicum of evidentiary support. Those incidents are: (1) Plaintiff's complaint about pay disparity in 2017 (and no later than November 2017); (2) Dr. Gopal's rejected sexual advance at his Halloween party in 2018; (3) dispute over pension payments in December 2020; and (4) Plaintiff's dispute with Dr. Gopal about patient care in November 2021.

As for the first incident, Plaintiff testified that she complained at some point in 2017 about the fact that her male colleagues were paid a higher commission rate despite the fact that she allegedly worked harder than they did and had more credentials, notwithstanding that it is undisputed that they had more years of experience. *See* Def. 56.1 Reply ¶¶ 10, 12; Pl. Dep. 50:14-51:5; 63:15-24. Of course, Plaintiff comes forward with no evidence as to what the male physicians at NYSSRM were actually paid. In any event, it is undisputed that in 2017 Plaintiff was being paid 50% in commissions, which was reduced to 40% in November 2017 due to "high business expenses and reduced revenue collection." Def. 56.1 Reply ¶ 6. At the time, Plaintiff replied that she "totally understand[s]," Friedman Decl., Ex. D, a far cry from complaining about her pay or now claiming that there was some sex-based disparity. And critically, Plaintiff concedes that in 2018 *she requested* that her compensation be changed to commission only at 40%. *See* Def. 56.1 Reply ¶ 11. Accordingly, it is unclear how any perceived purported disparity in Plaintiff's pay could have contributed to a hostile work environment given that Plaintiff requested the compensation rate of 40%, which was lower than the rate she was receiving in 2017. Indeed,

in her opposition brief, Plaintiff rather tellingly does not even argue that any pay disparity in 2017 contributed to her claimed hostile work environment. Opp'n at 14-15.

As for the second incident, Plaintiff testified that Dr. Gopal offered her as a prize for wining best costume at a Halloween party in 2018 the opportunity to spend the night with him, which she rejected. Def. 56.1 Reply ¶ 39; *see also* Pl. Dep. 133:4-135:10. The parties characterize this act as a sexual advance. Def. 56.1 Reply ¶ 39. While this conduct is no doubt serious, even if accepted as true, a single sexual advance does not constitute a hostile work environment absent further misconduct. *See Mormol*, 364 F.3d at 55-59 (affirming grant of summary judgment finding insufficient evidence of hostile work environment where manager twice propositioned plaintiff for sex); *Kilgannon v. Soc. Sec. Admin.*, No. 1:20-cv-01891 (MKV), 2021 WL 4523505, at *6 (S.D.N.Y. Sept. 30, 2021) ("the law is clear that mere [sexual] advances, even repeated, will not constitute a hostile work environment absent further misconduct" and collecting cases); *Drouillard v. Sprint/United Mgmt. Co.*, 375 F. Supp. 3d 245, 264 (E.D.N.Y. 2019) ("[P]laintiffs cannot establish a hostile work environment claim based on a single sexual advance by a coworker."). And here, Plaintiff does not come forward with any evidence that this incident was so severe that she complained about it or that it altered the conditions of her employment. Plaintiff relies on her conclusory deposition testimony that after the 2018 Halloween party her work "became more hostile, more harassment, more comments, and I just progressively made less." *See* Def 56.1 Reply ¶ 39 (citing Pl. Dep. 135:17-23). But, as repeatedly discussed throughout this opinion, Plaintiff's conclusory allegations are insufficient to raise a genuine dispute of fact to defeat summary judgment. *See Jeffreys v. City of New York*, 426 F.3d 549, 554 (2d Cir. 2005) (nonmoving party cannot rely merely on "conclusory allegations or unsubstantiated speculation" to defeat summary judgment).

Plaintiff additionally argues that after the Halloween party, *over two years later* in December 2020, Dr. Gopal threatened litigation because Plaintiff would not let him take money out of her paycheck for pension payments. *See* Def 56.1 Reply ¶ 39 (citing Pl. Dep. 85:3-14, Friedman Decl., Ex. H). Notwithstanding the lack of any apparent connection between this seemingly isolated dispute over pension and the Halloween Party two years earlier in 2018, the undisputed record shows that Dr. Gopal was making the same pension related deductions from the male physicians in the practice as well. *See* Def 56.1 Reply ¶ 50-51; *see also* Rodriguez Decl., Ex. P (Plaintiff testifying in a separate state case brought by Dr. Gopal against her that Dr. Gopal took pension payments from Dr. Elzholz but that she did not let him take those deductions from her). This record evidence directly refutes any inference that the act of taking these deductions was sex-based hostility or connected to her refusal of his advance. Moreover, the record cited by Plaintiff contradicts her claim that Dr. Gopal threatened litigation over the pension issue, but rather that Plaintiff threatened litigation and Dr. Gopal responded that he was not interested in litigating. *See* Friedman Decl., Ex. H (Plaintiff texting "I will higher [sic] a lawyer to make sure this pension doesn't get deducted from my pay or to help me refuse it" and Dr. Gopal responding "ha ha you think I have time for that . . . lets just move on with our lives!"). And just as importantly, Plaintiff testified that while Dr. Gopal was ultimately unsuccessful in taking pension payments from her, he did successfully take the payments from Dr. Elzholz, further undercutting any notion that this issue impacted her conditions of employment, was sex-based discrimination, or contributed to any sex-based hostility in the workplace. Def. 56.1 Reply ¶ 50-51.

Lastly, Plaintiff argues that her denial of Dr. Gopal's sexual advance is also connected to the last and only other incident of supposed harassment: Plaintiff's text message dispute with Dr. Gopal over patient care on November 4, 2021, which precipitated her notice of resignation on the

same day. *See* Def. 56.1 Reply ¶¶ 39, 46. As discussed, in that text exchange, Dr. Gopal and Plaintiff disagreed over the proper treatment of a patient. Rodriguez Decl., Ex. I. The 2018 Halloween party is not mentioned. Rodriguez Decl., Ex. I. After Plaintiff pushed back on Dr. Gopal's comment that she should not call a patient a 'drug addict' and that she is "giving triggerpoints to peoples in chiropractic offices [sic]," Dr. Gopal further asserted that Plaintiff's Ivy league education was unimpressive, that she was an "Instagram trigger point chiropractor" not a real doctor, and that she should see a therapist "rather feeling imp [sic] on the likes of an Instagram star public account with the perverted men following." Rodriguez Decl., Ex. I. Plaintiff latches on to the reference to Instagram as evincing sex-based hostility. *See* Def. 56.1 Reply ¶ 46 (stating that the 2018 Halloween was not "the only instance Dr. Gopal engaged in sex discrimination" and proceeding to point only to Dr. Gopal making "a discriminatory remark regarding Plaintiff's Instagram" and quoting the text about "perverted men" following her Instagram account).

Even assuming this exchange reflects sex-based hostility, which is dubious, this harsh toned exchange, even in conjunction with the few other episodes, including Dr. Gopal's alleged sexual advance that occurred *three* years earlier, falls well short of the severity and frequency to demonstrate that her workplace was permeated with sex-based discrimination, intimidation, ridicule and insult. *See Cristofaro v. Lake Shore Cent. Sch. Dist.*, 473 F. App'x 28, 30 (2d Cir. 2012) (finding evidence that supervisor occasionally commented on Plaintiff's physical appearance, "participated in a bet with three other male employees as to when [he] would be able to engage Cristofaro in sexually explicit conversation" and "briefly made contact with the side of her body while standing next to her" was insufficient to establish hostile work environment); *Mormol*, 364 F.3d at 57-59 (affirming summary judgment in favor of the employer because two instances of overt sexual solicitation over two months and a subsequent disciplinary write up were

"not sufficiently severe or pervasive to create a hostile work environment"); *Alfano*, 294 F.3d at 379-80 (finding insufficient five incidents of sex-based hostility over a four-year period, which included telling plaintiff she ate carrots too seductively as well as placing a vulgar cartoon and carrots in a way representing genitalia in plaintiff's locker); *Petrosino v. Bell Atl.*, 385 F.3d 210, 223 (2d Cir. 2004) ("Simple teasing, offhand comments, or isolated incidents of offensive conduct (unless extremely serious) will not support a claim of discriminatory harassment."); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 768 (2d Cir. 1998) (offensive comment about plaintiff's buttocks and a deliberate touching of her breasts insufficient to establish a hostile work environment); *Kilgannon*, 2021 WL 4523505, at *7 (finding that a co-worker's repeated romantic overtures, comments on physical appearance, and even telling plaintiff she knew where he lived and had a weapon, was insufficient to establish hostile work environment). Further undermining Plaintiff's claim is the fact that Plaintiff swore under oath in the separate state case between the parties that she primarily resigned, not due to a hostile work environment, but because Defendant lost an insurance contract which impacted Plaintiff's earnings. *See* Def. 56.1 Reply ¶ 49.

In sum, the few isolated incidents that Plaintiff complains of that occurred over the span of four years—alleged pay disparity in 2017 that was resolved at her own request, the alleged rejected sexual advance at the 2018 Halloween party, successfully stopping Mr. Gopal from deducting pension contributions from her pay, and the 2021 text exchange over patient care that devolved into petty insults—are "too few, too separate in time, and too mild," *Alfano*, 294 F.3d at 379-80 (collecting cases), to permit a reasonable jury to conclude that Plaintiff experienced an objectively hostile work environment based on sex that was sufficiently pervasive or severe to alter the conditions of her employment. Accordingly, Plaintiff's hostile work environment claim fails on

the merits and Defendant is separately entitled to summary judgment on Plaintiff's Title VII hostile work environment claims on this basis as well.

**IV. Plaintiff's Title VII Retaliatory Hostile Work Environment Claim Fails On The Merits**

Plaintiff's retaliatory hostile work environment similarly fails because she fails to demonstrate any causal relationship between her engagement in protected activity and any materially adverse employment action.

To establish a prima facie case of retaliation under Title VII, a plaintiff must demonstrate that "(1) she engaged in protected activity, (2) the defendant was aware of that activity, (3) she was subjected to a retaliatory action, or a series of retaliatory actions, that were materially adverse, and (4) there was a causal connection between the protected activity and the materially adverse action or actions." *Carr*, 76 F.4th at 180.

As an initial matter, Plaintiff's opposition brief fails to specify precisely what act she engaged in that constitutes protected activity. Rather, she avers, with no citation to the record, that the evidence in this case "demonstrates that Plaintiff repeatedly complained about the way she was being treated, conduct that plainly constitutes protected activity." Opp'n at 20. Nonetheless, in scrutinizing the record, it is arguable that Plaintiff has come forward with record evidence in the form of her deposition testimony that she engaged in protected activity by complaining to Dr. Gopal about alleged pay disparity between her and her male colleagues in 2017 (November 2017 at the latest).[15] *See* Def. 56.1 Reply ¶ 12; *see also* Pl. Dep. 51:1-11. *See Bamba v. Fenton*, 758 F. App'x 8, 12–13 (2d Cir. 2018) ("[T]he employer must be able to reasonably understand that the complaint was directed at conduct prohibited by Title VII" to qualify as protected activity).

[15] As discussed, Plaintiff's complaint about pay disparity took place at the latest in November 2017 around the time her commissions were reduced from 50% to 40%. Def. 56.1 Reply ¶ 12; Pl. Dep. 50:10-51:11; Friedman Decl., Ex. E.

However, as previously noted, it is undisputed that in November 2017 Plaintiff's commission-based compensation was reduced from 50% to 40% due to "high business expenses and reduced revenue collection." Def. 56.1 Reply ¶ 6. At the time, Plaintiff replied that she "totally understand[s]." Friedman Decl., Ex. D. Moreover, Plaintiff concedes that in 2018 *she requested* that her compensation be changed to commission only at 40%. *See* Def. 56.1 Reply ¶ 11.

In any event, assuming Plaintiff's complaint about pay disparity in November 2017 constitutes protected activity, she has failed to demonstrate a causal relationship between this arguably protected activity and any subsequent materially adverse action. Plaintiff argues generally that "absent her complaints and rejection of Dr. Gopal's conduct, she would not have been subjected to the escalating hostility that culminated in her constructive discharge." Opp'n at 23. However, as discussed above, the only other issues she faced in the workplace that is adequately supported with evidentiary proof in the record are: (1) Dr. Gopal's "sexual advance" at the 2018 Halloween party; and (2) Plaintiff's harsh toned dispute with Dr. Gopal about patient care in November 2021.[16]

Plaintiff does not specifically argue that the sexual advance at the 2018 Halloween party was an act of retaliation. Opp'n at 9, 21-22. Rather, Plaintiff claims that "the terms and conditions that surrounded her employment substantially worsened *after* a 2018 office Halloween party." Opp'n at 9 (emphasis added).

[16] While she does not raise the argument in her opposition brief, to the extent Plaintiff attempts to rely on the dispute over pension related deductions from her paycheck in December 2020, this incident does not constitute actionable retaliation because it is undisputed that Dr. Gopal was making the same pension related deductions from the other male physicians in the practice as well. *See* Def 56.1 Reply ¶ 50-51; *see also* Rodriguez Decl., Ex. P. *See Carr*, 76 F.4th at 180 ("However, the alleged retaliatory actions were the result of generally applicable workplace policies and Carr has not adduced evidence that these policies were applied to her and not others. We have held that absent allegations of more direct hostile conduct, a reasonable employee would not be dissuaded from taking protected action simply because they are subject to the same policies as other employees."). Further, the incident took place years after her complaint about pay disparity.

Nonetheless, even assuming that the sexual proposition and the harsh toned exchange between Plaintiff and Dr. Gopal in 2021 were sufficiently adverse—*i.e.*, capable of dissuading a reasonable employee from engaging in protected activity—Plaintiff has failed to come forward with any evidence demonstrating a causal nexus between her purported protected activity of complaining about a pay disparity in 2017 (November 2017 at the latest) and these events. At best she relies on temporal proximity. But temporal proximity alone is insufficient given there is at least a roughly one-year gap between the complaint about pay disparity and the sexual advance in October 2018 and a four-year gap between the protected activity and her dispute with Dr. Gopal over patient care in November 2021. *See Chang v. Safe Horizons*, 254 F. App'x 838, 839 (2d Cir. 2007) (adverse act that occurred "almost one year after her complaint of discrimination" was too attenuated to establish "causal nexus based on temporal proximity"); *Burkybile v. Bd. of Educ.*, 411 F.3d 306, 314 (2d Cir. 2005) (finding no causation where more than a year passed between protected activity and alleged retaliation); *Appel v. Schoeman Updike Kaufman Stern & Ascher L.L.P.*, No. 14-cv-2065 (AJN), 2015 WL 13654007, at *13 (S.D.N.Y. Mar. 26, 2015) ("A one-year gap between the protected activity and the alleged retaliation is generally considered too great a timespan to provide circumstantial evidence of a causal connection for a retaliation claim," and collecting cases). Further undermining any causal nexus is the undisputed fact that Plaintiff swore under oath in a separate litigation that she primarily resigned from NYSSRM, not due to any hostile conduct, but because Defendant lost an insurance contract that impacted her earnings. *See* Def. 56.1 Reply ¶ 49; Rodriguez Decl., Ex. O.

In short, Plaintiff has failed to come forward with record evidence sufficient to demonstrate a causal relationship between her engagement in protected activity (protesting pay disparity in November 2017) and any adverse action. At best, she offers evidence of sporadic and isolated

incidents of unwelcome and inappropriate conduct, but fails to offer any record support to tether those incidents to her engagement in protected activity. The lengthy gap between these events, on its own, cannot demonstrate a causal nexus. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (where a plaintiff relies on "mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality . . . the temporal proximity must be very close") (citation modified). Accordingly, Defendant is separately entitled to summary judgment on the merits on Plaintiff's Title VII retaliatory hostile work environment claim.

**V. The Court Declines to Exercise Supplemental Jurisdiction Over Plaintiff's Remaining Claims**

As noted, Plaintiff also asserts claims under the NYCHRL and NYSHRL, which set different, more liberal standards as compared to Title VII, the federal counterpart. *See e.g.*, *Syeed*, 41 N.Y.3d at 451, 235 N.E.3d at 354, 211 NY.S.3d at 822; *Wright*, 237 A.D.3d at 1145, 232 N.Y.S.3d at 596; *Qorrolli*, 124 F.4th at 122–23 (noting both the NYCHRL and NYSHRL set a "more liberal pleading standard"); *Ya-Chen Chen v. City Univ. of N.Y.*, 805 F.3d 59, 75 (2d Cir. 2015) (quoting *Mihalik*, 715 F.3d at 109) (NYCHRL must be construed to account for its "uniquely broad and remedial purposes"); *Wheeler*, 694 F. Supp. 3d at 451 (noting hostile work environment claims under the NYSHRL and NYCHRL are governed by a more lenient standard as compared to Title VII).

Because the Court has granted summary judgment to Defendant on all of Plaintiff's federal law claims and Plaintiff's state claims are governed by a different standard, this Court declines to exercise supplemental jurisdiction over Plaintiff's NYSHRL and NYCHRL claims. *See* 28 U.S.C. § 1367(c)(3); *see also Marcus v. AT&T Corp.*, 138 F.3d 46, 57 (2d Cir. 1998) ("[W]here the federal claims are dismissed before trial, the state claims should be dismissed as well."); *Nance*, 2025 WL

965883, at *12-13 (declining to exercise supplemental jurisdiction over NYSHRL and NYCHRL after granting defendant summary judgment on Title VII claims); *Tieu v. New York City Econ. Dev. Corp.*, 717 F. Supp. 3d 305, 331 (S.D.N.Y. 2024) ("Having granted summary judgment to Defendants on all of [plaintiff's] federal claims, however, the Court declines to exercise supplemental jurisdiction over these state-law claims.").

Accordingly, Plaintiff's state law claims are dismissed without prejudice to renewal in state court.

## CONCLUSION

For the reasons discussed above, Defendant's motion for summary judgment is GRANTED. Defendant is entitled to judgment as a matter of law dismissing all federal claims with prejudice and all state law claims without prejudice to renewal in state court.

The Clerk of Court is respectfully requested to terminate docket entry 49 and close the case.

**SO ORDERED.**

**Dated: September 29, 2026**
**New York, New York**

Mary Kay Vyskocil

**MARY KAY VYSKOCIL**
**United States District Judge**